**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

NYKA O'CONNOR,

        Plaintiff,

v.                                   Case No. 3:15-cv-1387-J-32JBT

JULIE JONES, et al.,

        Defendants.

_____

## ORDER[1]

### I. Status

      Plaintiff, an inmate of the Florida penal system, is proceeding on a pro se Civil Rights

Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1).[2] Throughout the pendency of this case,

Plaintiff has filed several supplemental documents to support his assertions. See, e.g., Docs.

83, 90, 96, 100, 102, 111, 175, 194, 200, 201. In the Complaint, Plaintiff names as

Defendants Julie Jones, the Secretary of the Florida Department of Corrections (FDOC); Dr.

Shah, a "Gastro Specialist" at the Reception and Medical Center (RMC); and Dr. Contarini,

_____

[1] On March 13, 2018, Plaintiff filed a notice of interlocutory appeal (Doc. 211) of the Court's February 21, 2018 Order (Doc. 203), and on April 30, 2018, Plaintiff filed a notice of interlocutory appeal (Doc. 218) of the Court's April 3, 2018 Order (Doc. 215). This Court waited to enter this dispositive Order until the appeals were resolved. See USCA Orders (Docs. 235, 242).

[2] Citations to all filings will be to the document and page numbers as assigned by the Court's electronic case filing system.

a "General Surgeon" at RMC.[3] Doc. 1 at 3-4. He alleges that since he had stomach surgery in 2010, he has complained about "severe gastro pains and cramps[] that prohibit [him] from walking, eating, sleeping, etc." Id. at 9. He provides additional details about his other medical and mental health ailments, and claims that Defendants have been deliberately indifferent to his serious medical needs. Plaintiff also asserts that the Secretary of the FDOC has a custom, practice, or policy to unnecessarily delay providing adequate care to inmates' serious medical needs. Id. at 5. Additionally, Plaintiff relates problems with his diet and contends that the diet he is provided is insufficient and infringes on his "sincere Jewish & Siddha beliefs." Id. at 9.[4] He also alleges violations of the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA), as well as breach of contract claims. Attached to the Complaint are several grievances submitted by Plaintiff and the institutional responses thereto, as well as various other exhibits in support of Plaintiff's claims.

Before the Court are dispositive motions regarding the claims against Defendants Jones and Contarini. Specifically, Defendant Jones filed a Motion to Dismiss (Doc. 136), to which Plaintiff filed an Affidavit and Response in opposition (Doc. 176). Defendant Contarini and Plaintiff filed cross-motions for summary judgment. See Defendant Contarini's Motion

---

[3] Plaintiff also named RMC as a Defendant, but the Court dismissed those claims on December 2, 2015. See Order (Doc. 6).

[4] Plaintiff explains in his Response to Defendant Jones' Motion to Dismiss that his religion is "Vegetarian Judaism, which incorporates Siddha/SYDA Science" and that "Siddha Yoga/Kundalini Yoga is not a religion, but can be considered part of [his] belief system." Doc. 176 at 5 (capitalization and emphasis omitted).

for Summary Judgment (Docs. 25, 157[5]) and Plaintiff's opposition (Docs. 54, 55); Plaintiff's Motion for Partial Summary Judgment against Defendant Contarini and supporting documents (Docs. 153, 154, 171)[6] and Defendant Contarini's opposition (Doc. 159). The motions are now ripe for review.

## II. Defendant Jones' Motion to Dismiss

Plaintiff lists his claims against Defendant Jones as follows: (1) "denying O'Connor adequate diet [and] salt for his gastro health [and] religion" in violation of the First and Eighth Amendments, ADA, RA, and the Religious Land Use and Institutionalized Persons Act (RLUIPA); (2) "denying O'Connor adequate care for his serious gastro [and] shoulder needs" in violation of the Eighth Amendment, ADA, and RA; and (3) "denying O'Connor adequate diet, gastro [and] shoulder care for serious medical needs [and] not accommodating constitute breach of contract under Federal Common Laws [and] Fl[orida] contract laws." Doc. 1 at 8 (capitalization omitted). He alleges that Defendant Jones "has a practice, custom, [or] policy to subject inmates to unnecessary delay to provide adequate care for serious [medical] needs, even self injuries." Id. at 5 (capitalization omitted). He asserts that the "FDOC . . . [was] well aware" of his complaints based on his "verbal disclosure, written records, past history, e-mails, etc." Id. at 13.

_____

[5] Certain exhibits to Defendant Contarini's Motion were filed under seal. See Doc. 157. The redacted versions of the exhibits are attached to Doc. 132. The Court will cite to the redacted exhibits.

[6] It appears that Plaintiff entitled this a "partial" motion because he requests that his damages be determined at a trial. Doc. 153 at 24.

3

Defendant Jones argues that (1) Plaintiff's claims which accrued before November 17, 2011 are time-barred; (2) Plaintiff fails to state a claim under the ADA or the RA; (3) Plaintiff fails to state a claim regarding his medical treatment, and the claims regarding his diet are frivolous and/or he has failed to allege sufficient factual matter to state a claim; (4) Plaintiff should not be permitted to bootstrap unrelated claims to the claims which he used to satisfy the imminent danger exception to dismissal under 28 U.S.C. § 1915(g); and (5) Defendant Jones is entitled to qualified immunity and Eleventh Amendment immunity. See Doc. 136.[7]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not do. Id. (quotations, alteration, and citation omitted). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted). The Court liberally construes the pro se Plaintiff's allegations. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011).

---

[7] Plaintiff states that his RLUIPA and breach of contract claims "were evaded," because Defendant Jones did not directly address them in her Motion. Doc. 176 at 29. Regardless, the Court can review these claims under 28 U.S.C. § 1915(e)(2)(B).

**A. Claims Relating to 2010 Surgery**

Plaintiff has failed to allege sufficient factual allegations to maintain a cause of action against Defendant Jones for what occurred during his 2010 surgery or his immediate post-surgery medical care.[8] Insofar as Plaintiff is attempting to raise any claims against Defendant Jones in that regard, the claims are due to be dismissed.

**B. ADA and RA Claims**

> Under Title II of the ADA, public entities are prohibited from discriminating against individuals with disabilities or denying them services because of their disabilities. See 42 U.S.C. § 12132. "Only public entities are liable for violations of Title II of the ADA." Edison v. Douberly, 604 F.3d 1307, 1308 (11th Cir. 2010). State prisons are public entities for purposes of the ADA. Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998). The standard for determining liability under the [RA] is the same as the standard under the ADA. Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).[9]
>
> To state a claim of discrimination under Title II, a claimant must prove:
>
>> (1) that he is a qualified individual with a disability; and (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or

------

[8] Defendant Jones was appointed as the Secretary of the FDOC in January 2015. See Florida Department of Corrections, Office of the Secretary, available at http://www.dc.state.fl.us/secretary.html (last visited Dec. 12, 2018).

[9] "With the exception of its federal funding requirement, the RA uses the same standards as the ADA, and therefore, cases interpreting either are applicable and interchangeable." Badillo v. Thorpe, 158 F. App'x 208, 214 (11th Cir. 2005) (citing Cash v. Smith, 231 F.3d 1301, 1305 & n. 2 (11th Cir. 2000)); see J.S., III by & through J.S. Jr. v. Houston Cty. Bd. of Educ., 877 F.3d 979, 985 (11th Cir. 2017) ("Discrimination claims under the ADA and the [RA] are governed by the same standards, and the two claims are generally discussed together.").

> was otherwise discriminated against by the
> public entity; and (3) that the exclusion, denial of
> benefit, or discrimination was by reason of the
> plaintiff's disability.
>
> Bircoll v. Miami-Dade Cty., 480 F.3d 1072, 1083 (11th Cir.
> 2007). Public entities must make reasonable modifications to
> their policies, practices, or procedures when necessary to
> avoid discrimination on the basis of a disability unless making
> the modifications would "fundamentally alter the nature of the
> service[s], program[s], or activit[ies]." 28 C.F.R. § 35.130(b)(7).
>
> A disability is "a physical or mental impairment that
> substantially limits one or more major life activities," such as
> caring for oneself, concentrating, or thinking. 42 U.S.C. §
> 12102(1)(A), (2)(A). A qualified individual with a disability is
> someone who has a disability and "meets the essential
> eligibility requirements for the receipt of services or the
> participation in programs or activities provided by a public
> entity," with or without reasonable modifications. Id. §
> 12131(2).

Owens v. Sec'y, Fla. Dep't of Corr., 602 F. App'x 475, 477-78 (11th Cir. 2015) (some internal

citations modified); see Shotz v Cates, 256 F.3d 1077, 1079 (11th Cir. 2001).

Because only public entities may be liable under the ADA and RA, Plaintiff fails to

state a claim against Defendant Jones in her individual capacity. See, e.g., Owens, 602 F.

App'x at 477, 478; Edison v. Douberly, 604 F.3d 1307, 1308 (11th Cir. 2010) ("Only public

entities are liable for violations of Title II of the ADA."); Badillo v. Thorpe, 158 F. App'x 208,

211 (11th Cir. 2005) ("[T]here is no individual capacity liability under Title II of the ADA or

RA."). Therefore, the Court will grant Defendant Jones' Motion to the extent that any claims

raised against her in her individual capacity under the ADA and RA are due to be dismissed.

Even assuming Plaintiff has sufficiently alleged that he is a qualified individual with a disability,[10] he has failed to sufficiently allege an ADA or RA claim against Defendant Jones in her official capacity as the Secretary of the FDOC. Plaintiff does not provide factual allegations that would even lead to an inference that he was discriminated against on the basis of some disability. Plaintiff's complaint is that he was not given special accommodations as he requested; specifically, his requested diet, a no heavy lifting pass, a front cuff pass, and adequate medical care for his complex regional pain syndrome and gastro disabilities. To the extent he is basing his claims on his perceived lack of adequate medical care, claims under the ADA and RA cannot be used as a means to pursue medical malpractice claims. Indeed, the ADA was not designed to subsume medical malpractice claims, and ADA claims do not arise from a defendant's failure to provide medical care to a disabled inmate. See Jones v. Rutherford, 546 F. App'x 808, 811-12 (11th Cir. 2013); Finn v. Haddock, 459 F. App'x 833, 837-38 (11th Cir. 2012) (stating that "failure to provide adequate medical treatment . . . does not violate the ADA or [RA]" (citations omitted)). In sum, Plaintiff's conclusory allegations fail to state a claim against Defendant Jones under either the ADA or RA, and her Motion is due to be granted in that regard.

### C. Medical Treatment

To state a claim under § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th

---

[10] Plaintiff states that he "is a qualified individual with Gastrointestinal Disabilities that interrelate[] to [his] Mental Disabilities [and] Shoulder Disabilities (CRPS)." Doc. 1 at 14.

Cir. 2015). The Eleventh Circuit has rejected the theory of respondeat superior in § 1983 cases. See Keith v. DeKalb Cty., Ga., 749 F.3d 1034, 1047 (11th Cir. 2014) (citing Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)); see also Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010) (affirming the district court's dismissal of the secretary of the FDOC because the plaintiff failed to allege that the secretary personally participated in an action that caused the plaintiff injury or that the plaintiff's "injuries were the result of an official policy that [the secretary] established").

> It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous.

Cottone v. Jenne, 326 F.3d 1352, 1360-61 (11th Cir. 2003) (internal quotations and citations omitted).

There is no suggestion here that Defendant Jones personally participated in Plaintiff's medical care or alleged lack thereof. Rather, Plaintiff alleges that Defendant Jones is liable based on "a practice, custom, [or] policy to subject inmates to unnecessary delay to provide

adequate care for serious needs, even self injuries." Doc. 1 at 5. Plaintiff further claims that there was an actual delay in his medical care with respect to a surgery for which he was approved but never received. To support his claim, he attaches grievances and the institutional responses to support his assertions.

- On June 1, 2015, the Chief Health Officer (E. Perez) advised Plaintiff that he was "approved for surgery" and they were awaiting "a surgical date." Doc. 1-3 at 11.

- On June 22, 2015, Perez advised Plaintiff that he "will be seen as soon as an appointment is available." Doc. 1-3 at 17.

- On June 23, 2015, Plaintiff was advised that he had "a scheduled appointment with the general surgeon in the near future." Doc. 1-9 at 1.

- Perez advised Plaintiff on July 12, 2015: "There is not a procedure where Gallstones can be broken up and passed via your urine. That can be done for some kidney stones. Gallstones need to be removed." Doc. 1-3 at 21.

- On July 27, 2015, Plaintiff was told that he had an "appointment with the general surgeon in the near future." Doc. 1-3 at 7.

- In a response dated September 4, 2015, Plaintiff was advised that he had "been approved to be seen by the gastroenterologist and the general surgeon." Doc. 1-3 at 15, 19.

As of the date the Complaint was filed (November 17, 2015), Plaintiff had not had the surgery.[11]

---

[11] The Court initially expedited review of this case in light of Plaintiff's allegations that he was approved for a surgery but never received it. See Orders (Docs. 6, 7). The Court directed the Department to provide updates on the status of Plaintiff's medical care, including whether he was provided with the approved surgery. See Orders (Docs. 7, 92, 121).

Even liberally construing Plaintiff's allegations, however, his conclusory allegation that a policy, custom, or practice exists to delay inmates' medical care, and the example of what appears to be an actual delay in his care with respect to the gallbladder surgery, is insufficient to state a claim against Defendant Jones. Plaintiff provides no factual support or any detail regarding this alleged policy, custom, or practice. And his experience alone is not enough. "A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees." Craig v. Floyd Cty., Ga., 643 F.3d 1306, 1311 (11th Cir. 2011); see Rankin v. Bd. of Regents of the Univ. Sys. of Ga., 732 F. App'x 779, 783 (11th Cir. 2018) (affirming a district court's dismissal of a supervisory liability claim, reasoning that the "claim fails because most of the allegations supporting it are conclusory, and to the extent some are based on facts, they are limited to [the plaintiff's] own experience and as a result do not suggest a policy or custom of deliberate indifference to constitutional rights"). Plaintiff cannot hold Defendant Jones liable simply because she oversees the FDOC. Simply put, Plaintiff has not alleged sufficient factual matter to even infer a causal connection between any action or inaction of Defendant Jones and a violation of Plaintiff's rights. Thus, Plaintiff has failed to state a claim against Defendant Jones in this regard.

### D. Diet

Plaintiff complains that Defendants have a policy to deny him an adequate diet for his health and religious beliefs. In 2014, Plaintiff requested that the Department amend or adopt

---

Defendant Jones filed an Affidavit of Albert Carl Maier, M.D., J.D., on July 27, 2017, with attached medical records showing that the surgery is no longer medically necessary (Doc. 135); see also Docs. 127 (notice by Defendant Contarini), 128 (notice by Defendant Shah).

a rule to allow the combination of two or more therapeutic diets. The Secretary of the FDOC

(then, Michael Crews) denied Plaintiff's request:

> Rulemaking is unnecessary because pursuant to Rule 33-204.003(5), Florida Administrative Code, therapeutic diets for medical or dental reasons shall be provided as ordered by a Department of Corrections credentialed physician, clinical associate or dentist. Non-standard therapeutic diets shall be approved by the public health nutrition program manager and the regional medical executive director. This existing provision in Rule 33-204.003(5), Florida Administrative Code, already allows for non-standard therapeutic diets. Therefore [Plaintiff's] issue is one of compliance with existing Department rule or policy and the issue should be addressed through the inmate grievance process.

Doc. 1-8 at 1-2.

Plaintiff's complaints about his diet in this case boil down to his desire to dictate every

detail of his own diet. Indeed, he is requesting a handpicked combination of diets that are

offered by the FDOC. In his Response, he argues that Defendant "Jones et al, have [and]

continue to deny O'Connor a Low Residue, Fat Intolerance, Vegetarian Diet Combined; i.e.,

Non-standard Therapeutic Diet for his serious health needs [and] gastro disability . . . with

sincere Vegetarian Jewish Beliefs [and] SYDA Tenets, forming his belief system." Doc. 176

at 7-8 (some capitalization omitted). Plaintiff acknowledges there is a procedure in place for

inmates to request a particular diet, but apparently desires to make the request verbally

rather than in writing. See Doc. 1 at 17 (noting that FDOC has a policy where inmates may

verbally request an alternate or vegan diet upon entering a unit, but FDOC exercises a

custom to subject inmates to put their requests in writing). Plaintiff fails to allege a causal

connection between Defendant Jones and any alleged violation of his federally-protected

rights with respect to his diet. His conclusory allegations that FDOC has a policy to deny him

11

an adequate diet are insufficient to state a claim. And he does not allege sufficient factual matter to infer that an FDOC policy, custom, or practice substantially burdens the exercise of his religion or otherwise violates his rights. See Smith v. Owens, 848 F.3d 975, 979-80 (11th Cir. 2017) (discussing the elements of a RLUIPA claim); see also Holt v. Hobbs, 135 S. Ct. 853, 862 (2015) (recognzing that "RLUIPA protects 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief,' § 2000cc-5(7)(A), but, of course, a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation"). The claims against Defendant Jones with respect to Plaintiff's diet will be dismissed.

### E. Eleventh Amendment Immunity

Absent a waiver or action by Congress, the Eleventh Amendment bars a damages suit against a state or a state official in his or her official capacity. Kentucky v. Graham, 473 U.S. 159, 169 (1985); see Zatler v. Wainwright, 802 F.2d 397, 399-400 (11th Cir. 1986) (per curiam). "Congress has not abrogated the states' sovereign immunity for purposes of section 1983 suits for damages, and Florida has not waived its immunity with regard to such suits." Wusiya v. City of Miami Beach, 614 F. App'x 389, 393 (11th Cir. 2015) (citing Gamble v. Fla. Dep't of Health & Rehab. Servs., 779 F.2d 1509, 1512, 1520 (11th Cir. 1986)). Therefore, to the extent Plaintiff is suing Defendant Jones in her official capacity under § 1983 for monetary damages, such claims are dismissed.

### F. Contract Claims

In conclusory fashion, Plaintiff contends that Defendant Jones has violated state and federal contract laws. He attached to his Complaint random pages of a contract purportedly

between the FDOC and Corizon, but his allegations are wholly deficient. They will be dismissed.

## G. Conclusion on Defendant Jones' Motion to Dismiss

The Court has reviewed the pertinent filings with respect to the claims raised against Defendant Jones, and finds that Plaintiff has failed to state a claim against her. The Court further finds that any amendment would be futile. This, all claims against Defendant Jones will be dismissed.[12]

## III. Cross-Motions for Summary Judgment - Claims Against Defendant Contarini

"'Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1300 (11th Cir. 2016) (quoting Jurich v. Compass Marine, Inc., 764 F.3d 1302, 1304 (11th Cir. 2014)); see Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Bowen v. Manheim Remarketing, Inc., 882 F.3d 1358, 1362 (11th Cir. 2018) (quotations and citation omitted).

> If the movant satisfies the burden of production showing that there is no genuine issue of fact, "the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor." Shiver v. Chertoff, 549 F.3d 1342, 1343 (11th Cir. 2008) (quotation omitted). [The Court] draw[s] "all factual inferences in a light most favorable to the non-moving party." Id.

Winborn v. Supreme Beverage Co. Inc., 572 F. App'x 672, 674 (11th Cir. 2014) (per curiam).

---

[12] Given the Court's findings, there is no need to address Defendant Jones' "bootstrapping" or qualified immunity arguments.

"[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote and citation omitted). "'A mere scintilla of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.'" Loren v. Sasser, 309 F.3d 1296, 1302 (11th Cir. 2002) (quoting Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir.1990) (internal quotations omitted)). "The principles governing summary judgment do not change when the parties file cross-motions for summary judgment. When faced with cross-motions, the Court must determine whether either of the parties deserves judgment as a matter of law on the undisputed facts." T-Mobile S. LLC v. City of Jacksonville, Fla., 564 F. Supp. 2d 1337, 1340 (M.D. Fla. 2008).[13]

In his Complaint, Plaintiff lists his claims against Defendant Contarini as follows: (1) Defendant Contarini was deliberately indifferent to Plaintiff's serious medical needs; (2) he denied Plaintiff an adequate diet to comply with Plaintiff's religion; and (3) his failure to

---

[13] This Court typically does not decide a motion for summary judgment before the end of discovery. See, e.g., Smith v. Fla. Dep't of Corr., 713 F.3d 1059, 1064 (11th Cir. 2013) ("Summary judgment is premature when a party is not provided a reasonable opportunity to discover information essential to his opposition."); Snook v. Trust Co. of Ga. Bank of Savannah, N.A., 859 F.2d 865, 870 (11th Cir. 1988). However, the Court finds that the record is adequately developed and that it is appropriate to grant Defendant Contarini's Motion at this time. The Court previously advised Plaintiff of summary judgment procedures (Doc. 7) and further advised him that the claims against Defendant Contarini would be addressed on summary judgment (Doc. 160). Additionally, Plaintiff and Defendant Contarini filed cross-motions for summary judgment with voluminous supporting exhibits and affidavits. The Court afforded Plaintiff an opportunity to state exactly what discovery was necessary before resolving the cross-motions for summary judgment. See Order (Doc. 160). Plaintiff's request to conduct discovery (Doc. 170) fails to set forth any relevant discovery that is necessary to resolve the summary judgment motions. Thus, his request to conduct discovery on the claims raised against Defendant Contarini will be denied.

provide adequate medical treatment and a religious diet constitutes a breach of contract under federal common law and Florida contract laws. Doc. 1 at 5.

Defendant Contarini filed a Motion for Summary Judgment (Doc. 25), in which he argues that (1) he was not deliberately indifferent to Plaintiff's serious medical needs; (2) Plaintiff did not comply with the legal procedures before bringing a medical negligence claim;[14] and (3) Plaintiff's breach of contract claims should be dismissed. In an affidavit attached to the Motion, Defendant Contarini explains his treatment history with Plaintiff.

> I am a physician, board certified in general surgery, that has for a period of time maintained a contract with the [FDOC] and then Corizon Correctional Healthcare to provide **certain limited medical treatment to inmates referred to my attention**. I am not an employee of the [FDOC].
>
> I first treated Plaintiff on April 8, 2010, one day after he was admitted to Memorial Hospital in Jacksonville. Plaintiff's admission was necessitated by the fact that he swallowed a paperclip three months prior and an []x-ray completed indicated the foreign body was still present in the left lower quadrant of his abdomen.
>
> The next day, April 9, 2010, I performed a simple and short laparotomy with removal of the paper clip from the omentum. No complications were experienced during the completion of this procedure and Plaintiff was discharged from Memorial Hospital on April 12, 2010.
>
> I did not have involvement with Plaintiff again until approximately five years later when he was scheduled to

---

[14] Plaintiff states in his Response to Defendant Contarini's Motion that he did not raise a claim for negligence, but the Court should find Dr. Contarini was negligent. Doc. 54 at 11. Because Plaintiff did not raise a negligence claim in his Complaint, and "[a] plaintiff may not amend [a] complaint through argument in a brief opposing summary judgment," the Court will not address the arguments with respect to a state law negligence claim. Dukes v. Deaton, 852 F.3d 1035, 1046 (11th Cir. 2017) (quoting Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004)), cert. denied, 138 S. Ct. 72 (2017).

appear at my clinic . . . on April 20, 2015 and May 11, 2015. Plaintiff did not present for either visit.

On May 12, 2015, Plaintiff reported to my clinic due to a referral by a physician at Union Correctional Institution. Plaintiff presented with left upper quadrant abdominal pain and his physical examination revealed only mild tenderness on the left side of his abdomen. A previously completed abdominal ultrasound indicated "possible gallbladder polyps[.]"

Due to Plaintiff's multiple dyspeptic complaints aside and apart from the abdominal pain, I explained that further testing and treatment needed to be completed including an additional abdominal ultrasound, laboratory tests, and a consultation with Dr. Gaurang N. Shah, a gastroenterologist. Specifically, a consultation with Dr. Shah was recommended in order to obtain a second non-surgical opinion as to whether Dr. Shah would be in agreement that a cholecystectomy[15] would be needed due to Plaintiff's suspected gallbladder polyps. Accordingly, I ordered an additional gallbladder ultrasound with twelve hours of fasting, the consultation with Dr. Shah, and requested to see Plaintiff back in one month.

At no time before, during or since this May 12, 2015, visit with the Plaintiff did I diagnose him with appendicitis.

Plaintiff next presented to my clinic on June 9, 2015. The previously ordered ultrasound and laboratory tests had not yet been performed. I again ordered that these tests be completed.

At this visit, Plaintiff made a complaint that he would prefer a "religious" diet. I explained that I did not, and could not, prescribe the "religious" diet he requested as that is something that is determined at an institutional level and is out of my scope of control.

---

[15] A cholecystectomy is a surgical procedure to remove the gallbladder. See Cholecystectomy (gallbladder removal), Mayo Clinic, available at https://www.mayoclinic.org/tests-procedures/cholecystectomy/about/pac-20384818 (last visited Dec. 12, 2018).

While Plaintiff was scheduled to present to my clinic on July 7, 2015, he did not appear. He was next seen on July 14, 2015. Again Plaintiff complained of left abdominal pain. Each laboratory test that was performed was within normal limits and the second ultrasound showed cholesterol stones in his gallbladder. I performed a physical examination on this date and found mild tenderness in the left upper quadrant of Plaintiff's abdomen. I scheduled a follow up for one month with the hope that the consultation with Dr. Shah would be completed by that time.

Plaintiff returned to the clinic on August 20, 2015 and there were no changes to his complaints and physical findings. While an upper endoscopy was pending with Dr. Shah, I explained to Plaintiff that we could move forward with the cholecystectomy without first having that diagnostic procedure performed. Plaintiff commented that he would rather have the polyps themselves removed rather than the gallbladder itself, **I explained that his recommendation would not be the proper course of treatment for his problems**. I also told him that at the next visit, slated for approximately a month later, I would schedule the cholecystectomy even if the endoscopy was not completed.

**Plaintiff never returned to my clinic. Accordingly, I personally never requested approval for the surgery, nor do I know whether any subsequent request was made or approval was granted.**

In my medical opinion, Plaintiff was never in any imminent medical danger during the time he treated with my clinic from May until August of 2015. While I provided consultations and treatment to Plaintiff during this time period, **the treatment provided was limited to my expertise, general surgery. Treatment outside of this scope of expertise and things such as Plaintiff's request for a "religious" diet are out of my control and the purview of my care for the Plaintiff**.

Doc. 25-1 (paragraph numbering omitted and emphasis added). Defendant Contarini also filed Plaintiff's pertinent medical records (Doc. 132).

Plaintiff filed a sworn Response (Doc. 54) and an Affidavit (Doc. 55). He insists that Defendant Contarini was deliberately indifferent based on his "bad judg[]ment" with respect to Plaintiff's gallbladder issues. Doc. 54 at 6. He states that Defendant Contarini "verbally" diagnosed him with appendicitis on May 12, 2015. Id. at 2. He further states that on June 9, 2015, Defendant Contarini "recommended a low fat diet, over [Plaintiff's] objections." Id. at 3 (capitalization omitted). He indicates that he "requested a non-standard therapeutic diet for his health [and] religion," but he never requested a "religious diet." Id. (capitalization and emphasis omitted). Plaintiff avers that Defendant Contarini "never prescribed [an] adequate diet" and "never recommended or prescribed [Plaintiff] any meds." Doc. 55 at 3.

"To prevail on [a] § 1983 claim for inadequate medical treatment, [the plaintiff] must show (1) a serious medical need; (2) the health care providers' deliberate indifference to that need; and (3) causation between the health care providers' indifference and [the plaintiff's] injury." Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty. Fla., 871 F.3d 1272, 1279 (11th Cir. 2017) (citation omitted).[16]

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition. In either case, the medical need must be one that, if left unattended, poses a substantial risk of serious harm.

Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (quotations and citation omitted).

---

[16] Claims with respect to inadequate medical care for prisoners (Eighth Amendment) and pretrial detainees (Fourteenth Amendment) are subject to the same scrutiny. See, e.g., Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016).

"Deliberate indifference must be more than an inadvertent failure to provide adequate medical care, negligence in diagnosis or treatment, or medical malpractice." McLeod v. Sec'y, Fla. Dep't of Corr., 679 F. App'x 840, 843 (11th Cir. 2017) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)). Indeed, deliberate indifference to a serious medical need requires "three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence."[17] Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003) (citations omitted); see Dang, 871 F.3d at 1280; Melton, 841 F.3d at 1223 & n.2. "Subjective knowledge of the risk requires that the defendant be 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Dang, 871 F.3d at 1280 (quoting Caldwell v. Warden, FCI Talladega, 784 F.3d 1090, 1099-1100 (11th Cir. 2014)).

> An official disregards a serious risk by more than mere negligence "when he [or she] knows that an inmate is in serious need of medical care, but he [or she] fails or refuses to obtain medical treatment for the inmate." Lancaster v. Monroe Cty., Ala., 116 F.3d 1419, 1425 (11th Cir. 1997), overruled on other grounds by LeFrere v. Quezada, 588 F.3d 1317, 1318 (11th Cir. 2009). Even when medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs. See Harris v. Coweta Cty., 21 F.3d 388, 393-94 (11th Cir. 1994) (citing Brown v. Hughes, 894 F.2d 1533, 1537-39 (11th Cir. 1990)).[18] Further, "medical care which is so cursory

---

[17] "Accidents, mistakes, negligence, and medical malpractice are not 'constitutional violation[s] merely because the victim is a prisoner.'" Harris v. Coweta Cnty., 21 F.3d 388, 393 (11th Cir. 1994) (quoting Estelle, 429 U.S. at 106).

[18] "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." McElligott v. Foley,

> as to amount to no treatment at all may amount to deliberate
> indifference." Mandel v. Doe, 888 F.2d 783, 789 (11th Cir.
> 1989) (citations omitted). However, medical treatment violates
> the Constitution only when it is "so grossly incompetent,
> inadequate, or excessive as to shock the conscience or to be
> intolerable to fundamental fairness." Rogers v. Evans, 792 F.2d
> 1052, 1058 (11th Cir. 1986) (citation omitted).

Dang, 871 F.3d at 1280. "'[I]mputed or collective knowledge cannot serve as the basis for a

claim of deliberate indifference. Each individual defendant must be judged separately and

on the basis of what that person kn[ew].'" Id. (quoting Burnette v. Taylor, 533 F.3d 1325,

1331 (11th Cir. 2008)).

Even viewing the facts in the light most favorable to Plaintiff, his claim that Defendant

Contarini was deliberately indifferent to his serious medical needs is unfounded and refuted

by the medical records. Plaintiff was referred to Defendant Contarini, a general surgeon, for

evaluation for "probable cholesterol stones within the gallbladder." Doc. 132-4 at 3

(capitalization omitted). Defendant Contarini provided Plaintiff with medical treatment

including examinations, testing, and referrals. He offered to perform a cholecystectomy, but

Plaintiff requested a different course of treatment. Defendant Contarini, in his medical

opinion, did not agree with the course of treatment suggested by Plaintiff. Defendant

Contarini indicated that he would request approval for the cholecystectomy at Plaintiff's next

visit, but Plaintiff never returned to the clinic. See Doc. 132-7 at 2. That Defendant Contarini

would not perform or recommend the "less-invasive" option that Plaintiff requested does not

---

182 F.3d 1248, 1255 (11th Cir. 1999) (citation omitted). However, "[i]t is also true that when
a prison inmate has received medical care, courts hesitate to find an Eighth Amendment
violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (citing Hamm v. DeKalb
County, 774 F.2d 1567, 1575 (11th Cir.1985)); see Boone v. Gaxiola, 665 F. App'x 772, 774
(11th Cir. 2016).

render Defendant Contarini deliberately indifferent. See Melton, 841 F.3d at 1224 ("[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment does not support a claim of deliberate indifference." (quotations and citation omitted)). Additionally, Plaintiff's medical records and Defendant Contarini's affidavit reflect that Plaintiff was never diagnosed with appendicitis. Plaintiff cannot create an issue of fact by stating he was verbally diagnosed with appendicitis when the records show otherwise. Defendant Contarini was not deliberately indifferent in failing to treat a condition that was never diagnosed.

As to Plaintiff's diet, Defendant Contarini explained that he could not prescribe the "religious diet" Plaintiff requested because that is determined at the institutional level and Defendant Contarini was not employed by the FDOC. See Doc. 25-1 at 4. In June and August 2015, Defendant Contarini recommended a "low fat" diet based on Plaintiff's medical presentation. See Doc. 132-5 at 2; Doc. at 132-7 at 2. Indeed, the medical records show that Plaintiff complained of constipation and a fatty-food intolerance. See Doc. 132-4 at 2, 3; Doc. 132-5 at 3; 132-6 at 3; 132-7 at 3. But what Plaintiff wanted was his own combination of the fat intolerance, low residue, and vegetarian diets. Again, while Defendant Contarini did not order the combination-diet requested by Plaintiff, Plaintiff's disagreement with Defendant Contarini's recommendation does not amount to a constitutional violation. Likewise, the records support a finding that Defendant Contarini's failure to provide Plaintiff with pain or other medications based on his medical presentation is not deliberate indifference.

Plaintiff also contends that Defendant Contarini condoned Defendant Shah's alleged delay in treating Plaintiff. As noted, Defendant Contarini provided Plaintiff with medical care

and treatment and referred him to Dr. Shah. Defendant Contarini's plan was to request approval for the cholecystectomy at Plaintiff's next visit, even if Plaintiff had not consulted with Dr. Shah by that time, but Plaintiff never returned to the clinic. Plaintiff makes much of the fact that he relies on the FDOC to transport him to Defendant Contarini's clinic. See Doc. 54 at 5, 7, 8, 12; Doc. 55 at 2. However, he does not allege that Defendant Contarini in any way interfered with Plaintiff's transportation on the dates Plaintiff did not make it to the clinic.

Finally, Plaintiff attempts to raise a claim for "breach of contract" by alleging that Defendant Contarini contracted with the FDOC to provide him with medical care, and Defendant Contarini breached this contract. He attached to his Complaint random pages of a contract purportedly between the FDOC and Corizon, but his allegations are wholly deficient. They will be dismissed.

In sum, the Court has reviewed in detail the parties' filings and finds that Defendant Contarini's summary judgment motion is due to be granted. Plaintiff simply disagrees with the course of treatment recommended by and provided by Defendant Contarini. The medical records refute Plaintiff's allegations against this Defendant. Thus, because there are no genuine issues as to any material facts and Defendant Contarini is entitled to summary judgment as a matter of law, his Motion is due to be granted and Plaintiff's Motion will be denied.

Accordingly, it is

**ORDERED**:

1.      Defendant Jones' Motion to Dismiss (Doc. 136) is **GRANTED**. All claims against Defendant Jones are **DISMISSED with prejudice**. Judgment to that effect will be

withheld pending adjudication of the action as a whole. <u>See</u> Fed. R. Civ. P. 54. The Clerk shall terminate Defendant Jones as a party in this case.

2.      Plaintiff's Motion Requesting Permission to Conduct Discovery regarding the claims against Defendant Contarini and to Appoint Counsel (Doc. 170) is **DENIED**.

3.      Defendant Contarini's Motion for Summary Judgment (Doc. 25) is **GRANTED**. Judgment to that effect will be withheld pending adjudication of the action as a whole. <u>See</u> Fed. R. Civ. P. 54. The Clerk shall terminate Defendant Contarini as a party in this case.

4.      Plaintiff's Motion for Partial Summary Judgment against Defendant Contarini (Doc. 153) is **DENIED**. Dr. Shah is the only remaining Defendant.

5.      Plaintiff's Motion to Proceed with Discovery (Doc. 126) is **GRANTED to the extent** that the following case management deadlines are set:

    A.      The parties shall serve all discovery requests no later than **February 5, 2019**. A party to whom a discovery request is directed must respond within the time permitted by the Federal Rules of Civil Procedure. Any motions relating to discovery shall be filed by **March 25, 2019**.

    B.      Pursuant to Federal Rule of Civil Procedure 30(a)(2)(B), Defendant Shah is granted leave to depose Plaintiff if he so chooses. Defendant shall contact the penal institution at which Plaintiff is housed to schedule the deposition.

    C.      All motions to dismiss and/or for summary judgment shall be filed by **April 29, 2019**. This deadline is also applicable to the filing of any

motions or the raising of any affirmative defenses based on qualified immunity.

    D.      Responses to any motions to dismiss and/or for summary judgment shall be filed by **June 13, 2019**.

6.      Ruling on Plaintiff's Motion for Summary Judgment against Defendant Shah (Doc. 220) remains **DEFERRED**. Defendant Shah shall file a response to Plaintiff's Motion by the deadline set for responses to dispositive motions.

7.      Defendant Shah's Motion for Sanctions (Doc. 209), which is joined by Defendant Contarini (Doc. 225), is **DENIED**. This case is now limited solely to the claims raised in the Complaint against Defendant Shah. Plaintiff should focus his efforts on the claims against Defendant Shah. Any filings that do not relate to the claims against Defendant Shah will be stricken. Plaintiff's Motion to Redact (Doc. 212) and Motion to Defer Ruling Adversely (Doc. 217), which relate to Defendant Shah's sanctions motion, are **DENIED as moot**.

8.      Defendant Contarini's Motion to Strike (Doc. 226) is **DENIED**.

9.      Plaintiff's Motion for Sanctions (Doc. 227), to which Defendant Shah responded (Doc. 230), is **DENIED**.

10.      Plaintiff's Motion to Clarify, Strike, and Issue Sanctions (Doc. 229), to which Defendant Contarini responded (Doc. 231), is **DENIED**.

11.      Plaintiff's Motion and Notice of Clarification (Doc. 233) is **DENIED**.

12.     Insofar as Plaintiff requests sanctions due to fraud (Doc. 237), his request is **DENIED**, and his Request to Initiate Discovery (Doc. 237) is **GRANTED to the extent stated herein and otherwise DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of December, 2018.

TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 12/12
c:
Nyka O'Connor, #199579
Counsel of Record