# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

NYKA O'CONNOR,

              Plaintiff,

v.                                      Case No. 3:15-cv-1387-J-32JBT

JULIE JONES, et al.,

              Defendants.

_____

## ORDER

### I.    Status

Plaintiff, an inmate of the Florida penal system, is proceeding on a pro se Civil Rights Complaint (Doc. 1). Throughout the pendency of this case, he has filed several supplemental documents in support of his assertions. See, e.g., Docs. 83, 90, 96, 100, 102, 111, 175, 194, 200, 201. The Court has already adjudicated the claims against the Reception and Medical Center, Julie Jones/Mark Inch (as the Secretary of the Florida Department of Corrections), and Dr. Contarini. See Orders (Docs. 6, 243). The only remaining Defendant is Dr. Shah, a "Gastro Specialist" at the Reception and Medical Center. Plaintiff claims that Defendant Shah was deliberately indifferent to his serious medical needs; he denied Plaintiff an adequate diet to comply with Plaintiff's religion;

and he breached his contractual duties to Plaintiff by denying Plaintiff adequate medical care and a religious diet. See Doc. 1 at 8.

Before the Court are Plaintiff's and Defendant Shah's cross-motions for summary judgment.[1] See Plaintiff's Motion for Summary Judgment Against Shah (Doc. 220), supported by a Declaration (Doc. 221) and Exhibits (Doc. 222); Defendant Shah's Motion for Summary Judgment (Doc. 257). Plaintiff filed a response in opposition to Defendant Shah's Motion. See "O'Connor's Motion Opposing Defendant[']s Motion for Summary Judgment Re: Shah" (Doc. 264); Appendix in Support (Doc. 265). Defendant Shah did not file a response to Plaintiff's Summary Judgment Motion. However, considering the file, the Court deems the parties' Motions ripe for review.

Also before the Court is Plaintiff's request for reconsideration of the Court's Order (Doc. 243). See Plaintiff's Notice/Motion, Supplement, and Second Supplement (Docs. 247, 250, 252). Defendants Contarini, Shah, and Jones/Inch[2] filed responses. See Defendant Contarini's Response in Opposition to Plaintiff's Notice/Motion, Supplement and Second Supplement (Doc. 254); Defendant

---

[1] The Court previously advised Plaintiff of the provisions regarding summary judgment motions and gave him an opportunity to respond. See Order (Doc. 7).

[2] In the Complaint, Plaintiff sued Julie Jones in her individual and official capacities. During the pendency of this case, a new Secretary of the Florida Department of Corrections was appointed. Thus, on April 23, 2019, the Court directed that Mark S. Inch, current Secretary of the FDOC, be substituted for Julie Jones in her official capacity only. See Order (Doc. 253).

Shah's Response to Plaintiff's Notice/Motion, Supplement, and Second Supplement (Doc. 255); and Defendant Jones/Inch Response to Plaintiff's Filings (Doc. 256). Plaintiff's request for reconsideration is ripe for review.

## II. Cross-Motions for Summary Judgment

### a. Parties' Positions

Plaintiff contends that since his April 9, 2010 surgery, he has been requesting "adequate med[ication]s for severe pains, cramps, acid reflux, heartburns, etc.," but Defendant Shah, along with the other Defendants, has denied his requests "to save money." Doc. 220 at 3.[3] He generally asserts that he has been "denied adequate care [and] reasonable accommodations for his gastro-health-disability [and] sincere religious belief system," and that he has lost weight and been "denied adequate diet." Id. He asserts that he presented his issues to Defendant Shah, but Defendant Shah failed to prescribe or recommend "a non-standard therapeutic diet to comply with [Plaintiff's] gastro-disability-health needs [and] religious belief system." Id. at 3-4.

Further, Plaintiff contends that there was a several-month delay before he actually saw Defendant Shah on September 23, 2015. See id. at 6. He acknowledges that Defendant Shah ordered a HIDA scan and colonoscopy, but

---

[3] Plaintiff's Motion does not focus solely on Defendant Shah. Given that Defendant Shah is the only Defendant remaining, the Court focuses its analysis on the claims raised against him.

Plaintiff claims that Defendant Shah failed to provide any medication for his constipation. See id. at 6-7. During the September 23, 2015 visit, Plaintiff "tried requesting a non-standard therapeutic diet" but through deliberate indifference and in violation of Plaintiff's religion, "Dr. Shah didn't prescribe/recommend." Id. at 7; id. at 10 (arguing that Defendant Shah "had no reasonable, valid, rational legitimate penological justification(s) to deny O'Connor an adequate diet for his health [and] religious belief system"). Plaintiff further acknowledges that he saw Defendant Shah again on October 21, 2015, but the HIDA scan and colonoscopy had not yet been performed. Id. at 7. Plaintiff complained during this visit "about his severe stomach pains, cramps, bloody stools, acid reflux, inadequate diet, delayed inquires needed to adequately diagnose, treat [and] proceed with Dr. Contarini's prospective surgery, but O'Connor[']s[] complaints to Dr. Shah aforesaid were to no avail." Id. While Defendant Shah prescribed lactulose for Plaintiff's constipation, Plaintiff argues this was "inadequate." Id.

Plaintiff lists his "serious medical needs," id. at 7-8, and argues that Defendant Shah was "deliberately indifferent by unnecessarily delaying [and] denying the performance of adequate [and] timely inquiries [and] tests, [and] delaying [and] denying adequate med[ication]s [and] diet compliant with O'Connor[']s[] health-gastro-disabilities [and] sincere religious belief system." Id. at 8; see also id. at 14-27. Plaintiff lists his injuries allegedly resulting from Defendant Shah's (and others') acts and omissions. Id. at 8-10, 16-17, 20-21.

4

Plaintiff also claims that by denying his diet, Defendant Shah violated Plaintiff's First Amendment rights (and corresponding rights under the Florida Constitution). See id. at 27-30. Additionally, Plaintiff claims that Defendant Shah "entered into a contract to provide O'Connor adequate care, custody, control [and] confinement," and he breached that duty. Id. at 13-14; see id. at 30-31. Plaintiff asserts that there are no material factual disputes and he is entitled to entry of summary judgment. See id. at 32.

Plaintiff's Declaration largely reiterates his factual allegations and addresses the exhibits he submitted, which include other inmates' affidavits, his medical records, and other information. See Docs. 221, 222.

Defendant Shah seeks entry of summary judgment in his favor, arguing that the record shows he was not deliberately indifferent to any serious medical need of Plaintiff's, and that Plaintiff simply disagrees with his course of treatment. See Doc. 257 at 9-12. In support of his position, Defendant Shah submitted copies of Plaintiff's pertinent medical records (Docs. 257-1, 257-2, 257-3, 257-5, 257-6) and a Declaration (Doc. 257-4), in which he avers in pertinent part:

> My first encounter with Nyka O'Connor was in 2010 at Memorial Hospital Jacksonville. I evaluated Mr. O'Connor on April 7, 2010 and then performed his colonoscopy on April 8, 2010 based on complaints of rectal bleeding after he swallowed a paper clip. The colonoscopy was unremarkable at that time.

The following day, on April 9, 2010, Mr. O'Connor underwent a laparotomy to remove the paper clip from his abdomen. Dr. Osvaldo Contarini performed the surgery.

I did not provide care or treatment to Mr. O'Connor again until I was consulted regarding his care in late 2015. At that time, I saw inmate O'Connor at the Reception Medical Center on September 23, 2015.

During the relevant time period, I reported to the Reception Medical Center for 2-3 Wednesdays a month. Dr. Radi was another gastroenterologist who held his clinic at the Reception Medical Center every Tuesday of the month. During my time at the Reception Medical Center, I performed procedures during the first half of every day and used the afternoons to see inmates on consultation in the clinic. It was during my time at the clinic that I evaluated Mr. O'Connor.

On September 23, 2015, Mr. O'Connor presented to me at the clinic with complaints of constipation and abdominal pain. For constipation, I would not have recommended a low-residue diet because he needed more fiber, not less. For abdomen pain, I recommended a HIDA scan. Based on my evaluation of inmate O'Connor and based on the fact that it had been five years since his previous colonoscopy, I recommended another colonoscopy. I created pre-op orders on that date.

There was nothing that I saw during my evaluation of Mr. O'Connor that led me to believe his condition was life threatening or that a colonoscopy or other treatment needed to be performed on an urgent basis. If I had believed Mr. O'Connor was at a risk for serious injury or death, I could have and would have contacted the medical director at the Reception Medical Center. Nothing in my work-up of Mr.

O'Connor indicated his condition required immediate attention in order to prevent serious pain or additional harm.

When Mr. O'Connor was seen by me on October 21, 2015, I noted that his colonoscopy and HIDA scan had not been done and I again put in orders for the colonoscopy and the HIDA scan.

Before I saw inmate O'Connor for any sort of follow up, I was served with a lawsuit in which inmate O'Connor alleged I had not provided appropriate care. Once served with the lawsuit, I informed the medical director at the Reception Medical Center that I did not feel comfortable treating the inmate any further and asked that the management of his case be handled by another physician.

For this reason, the last time I saw Nyka O'Connor was October 21, 2015. I have no knowledge of what care he received after that date and therefore I do not know whether he had surgery for his gallbladder at any point in time after October 21, 2015.

Doc. 257-4 at 2-3 (paragraph enumeration omitted).

In response, Plaintiff claims that Defendant Shah's Motion and Affidavit include "known falsified statements intended to mislead this honorable Court." Doc. 264 at 1 (capitalization omitted). Plaintiff contends that he raised the following claims against Defendant Shah:

O'Connor[']s[] 1983 Complaint encompassed claims of Dr. Shah being deliberately indifferent by failing to: perform timely tests [and] inquires; failing to provide adequate medications; failing to provide a non-standard therapeutic diet for his health [and] sincere religious belief system; Dr. Shah denying O'Connor the right to religion by denying a non-standard

7

> therapeutic diet for O'Connor's health [and] religion aforesaid; and Dr. Shah breaching a contractual duty to provide the above timely tests [and] inquires adequate med[ication]s, and adequate diet for his health [and] religion.

Id. at 1-2 (capitalization omitted). Plaintiff asserts that contrary to Defendant Shah's argument, Plaintiff did not seek simply a low-residue diet; rather, he sought a non-standard therapeutic diet for his health and religion. Id. at 2. He argues that Defendant Contarini repeatedly referred Plaintiff to Defendant Shah for an endoscopy and/or colonoscopy between May 12, 2015 and August 2015, but Plaintiff did not see Defendant Shah until September 23, 2015. Id. at 3-4. He contends that Defendant Shah was deliberately indifferent and unnecessarily denied and delayed necessary medical treatment. He acknowledges that he has not seen Defendant Shah since October 21, 2015. Id. at 6. He argues in opposition to each of Defendant Shah's points, and requests entry of summary judgment in his favor. See id. at 9-18; see also Doc. 265.

### b. Summary Judgment Standard

"'Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1300 (11th Cir. 2016) (quoting Jurich v. Compass Marine, Inc., 764 F.3d 1302, 1304 (11th Cir. 2014)); see Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." <u>Bowen v. Manheim Remarketing, Inc.</u>, 882 F.3d 1358, 1362 (11th Cir. 2018) (quotations and citation omitted); <u>see</u> <u>Hornsby-Culpepper v. Ware</u>, 906 F.3d 1302, 1311 (11th Cir. 2018) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." (quotations and citation omitted)). In considering a summary judgment motion, the Court views "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party." <u>Hornsby-Culpepper</u>, 906 F.3d at 1311 (quotations and citation omitted).

"[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (footnote and citation omitted); <u>see</u> <u>Winborn v. Supreme Beverage Co. Inc.</u>, 572 F. App'x 672, 674 (11th Cir. 2014) (per curiam) ("If the movant satisfies the burden of production showing that there is no genuine issue of fact, 'the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor.'" (quoting <u>Shiver v. Chertoff</u>, 549 F.3d 1342, 1343 (11th Cir. 2008)). "'A mere scintilla of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.'" <u>Loren v. Sasser</u>, 309 F.3d 1296, 1302 (11th Cir. 2002) (quoting <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990) (internal quotations omitted)).

"The principles governing summary judgment do not change when the parties file cross-motions for summary judgment. When faced with cross-motions, the Court must determine whether either of the parties deserves judgment as a matter of law on the undisputed facts." T-Mobile S. LLC v. City of Jacksonville, Fla., 564 F. Supp. 2d 1337, 1340 (M.D. Fla. 2008).

### c. Deliberate Indifference

"To prevail on [a] § 1983 claim for inadequate medical treatment, [the plaintiff] must show (1) a serious medical need; (2) the health care providers' deliberate indifference to that need; and (3) causation between the health care providers' indifference and [the plaintiff's] injury." Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty. Fla., 871 F.3d 1272, 1279 (11th Cir. 2017) (citation omitted).

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition. In either case, the medical need must be one that, if left unattended, poses a substantial risk of serious harm.

Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (quotations and citation omitted).

Deliberate indifference to a serious medical need requires "three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of

that risk; (3) by conduct that is more than mere negligence." <u>Farrow v. West</u>, 320 F.3d 1235, 1245 (11th Cir. 2003) (citations omitted); <u>see Patel v. Lanier Cty. Georgia</u>, No. 19-11253, 2020 WL 4591270, at *9 n.10 (11th Cir. Aug. 11, 2020) (recognizing "a tension within [Eleventh Circuit] precedent regarding the minimum standard for culpability under the deliberate-indifference standard," as some cases have used "more than <u>gross</u> negligence" while others have used "more than <u>mere</u> negligence"; finding, however, that it may be "a distinction without a difference" because "no matter how serious the negligence, conduct that can't fairly be characterized as <u>reckless</u> won't meet the Supreme Court's standard" (citations omitted)). "Subjective knowledge of the risk requires that the defendant be 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" <u>Dang</u>, 871 F.3d at 1280 (quoting <u>Caldwell v. Warden, FCI Talladega</u>, 784 F.3d 1090, 1099-1100 (11th Cir. 2014)).

> An official disregards a serious risk by more than mere negligence "when he [or she] knows that an inmate is in serious need of medical care, but he [or she] fails or refuses to obtain medical treatment for the inmate." <u>Lancaster v. Monroe Cty., Ala.</u>, 116 F.3d 1419, 1425 (11th Cir. 1997), <u>overruled on other grounds by LeFrere v. Quezada</u>, 588 F.3d 1317, 1318 (11th Cir. 2009). Even when medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs. <u>See Harris v. Coweta Cty.</u>, 21 F.3d 388, 393-94 (11th Cir. 1994) (citing <u>Brown v. Hughes</u>, 894

> F.2d 1533, 1537-39 (11th Cir. 1990)).[4] Further, "medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." Mandel v. Doe, 888 F.2d 783, 789 (11th Cir. 1989) (citations omitted). However, medical treatment violates the Constitution only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986) (citation omitted).

Dang, 871 F.3d at 1280. "'[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual defendant must be judged separately and on the basis of what that person kn[ew].'" Id. (quoting Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008)).

Insofar as Plaintiff claims that Defendant Shah was deliberately indifferent for failing to provide timely tests and inquiries, adequate medications, and a non-standard therapeutic diet, the Court finds his claims are refuted by the uncontradicted evidence. Whether to refer Plaintiff for different tests or provide a different mode of treatment is a matter of medical

---

[4] "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) (citation omitted). However, "[i]t is also true that when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (citing Hamm v. DeKalb Cty., 774 F.2d 1567, 1575 (11th Cir. 1985)); see Boone v. Gaxiola, 665 F. App'x 772, 774 (11th Cir. 2016).

judgment that does not amount to deliberate indifference. See Boone v. Gaxiola, 665 F. App'x 772, 774 (11th Cir. 2016) ("A medical decision not to pursue a particular course of diagnosis or treatment is a classic example of a matter for medical judgment, an exercise of which does not represent cruel and unusual punishment." (citing Estelle, 429 U.S. at 107-08). Likewise, Plaintiff's disagreement with Defendant's course of treatment does not support a deliberate indifference claim. See Melton, 841 F.3d at 1224 ("'[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment' does not support a claim of deliberate indifference." (quoting Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991)). Defendant Shah ordered a HIDA scan and colonoscopy, and he provided Plaintiff with lactulose and then recused himself from Plaintiff's medical care when Plaintiff sued him. The evidence shows that Defendant's treatment was not "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Brennan v. Headley, 807 F. App'x 927, 935 (11th Cir. 2020) (quoting Thigpen, 941 F.2d at 1505). Even taking all facts and inferences in the light most favorable to Plaintiff, Defendant is entitled to entry of summary judgment in his favor as to Plaintiff's deliberate indifference claims.

### d. Right to Religion and Breach of Contract

Plaintiff uses the same factual allegations to claim that, not only was

Defendant Shah deliberately indifferent to his serious medical needs, but Defendant Shah also violated Plaintiff's right to religion by denying his requested diet and Defendant Shah breached his contractual duties to provide timely tests and inquires, along with adequate medications and adequate diet.[5] In Plaintiff's Motion, he argues that "[t]he practice, custom, policy [and] systematic deficiencies by [Defendant] Jones, professed by Dr. Shah to deny" him his requested non-standard therapeutic diet violates his rights under the First Amendment and Florida Constitution. However, the Court has already found that Plaintiff failed to state a claim against Defendant Jones with respect to his diet (Doc. 243 at 10-12), and thus, by extension, if he failed to state a claim regarding a custom, policy or practice against Defendant Jones, then he has failed to state a claim that Defendant Shah upheld or "professed" such a custom, policy, or practice. Moreover, the evidence does not support Plaintiff's claim that Defendant Shah violated his religion by not providing him with the requested diet. Notably, Plaintiff acknowledges that, at most, Defendant Shah may have been able to recommend Plaintiff's requested diet, but he did not have authority to prescribe it. See Doc. 220 at 10-12. Plaintiff was referred to

---

[5] Defendant Shah did not address these claims in his Motion for Summary Judgment. Plaintiff addresses these claims in his Motion, and the Court is under an obligation to dismiss a case at any time if it fails to state a claim. See 28 U.S.C. § 1915(e)(2)(B). Regardless of the avenue, Plaintiff's claims against Defendant Shah fail.

Defendant Shah to address his medical concerns, not to address how the institution should handle Plaintiff's diet requests to accommodate his religion. Finally, as with the "contract" claims Plaintiff raised against Defendants Jones and Contarini, the Court finds the breach-of-contract claims against Defendant Shah are due to be dismissed as deficient. <u>See</u> Order (Doc. 243) at 12-13, 22. Simply put, Plaintiff's claims against Defendant Shah fail as a matter of law.

### III.   Plaintiff's Request for Reconsideration

Plaintiff requests the Court reconsider its Order dismissing the claims against Defendant Jones and granting summary judgment in favor of Defendant Contarini (Doc. 243). <u>See</u> Docs. 247, 250, 252. Plaintiff argues that the Court's Order "was erroneous" in light of the Eleventh Circuit's decision in <u>O'Connor v. Backman</u>, 743 F. App'x 373 (11th Cir. 2018). He further argues that this Court failed to review his Complaint as a whole and the Order "should be amended, altered, reheard, reconsidered, vacated, [and] voided, FRCP Rules 52(b), 59 [and] 60, due to matters overlooked, misapprehended, inadvertence, excusable neglect, fraud, failing to apply the right law, mis[]ap[p]lying [and] bad application of law." Doc. 247 at 1. Upon review of the file, the Court finds Plaintiff's request is due to be denied. The record clearly shows that the claims against all of the Defendants are either deficient in pleading or refuted by the undisputed evidence.

Accordingly, it is

**ORDERED**:

1.    Defendant Shah's Motion for Summary Judgment (Doc. 257) is **GRANTED**.

2.    Plaintiff's Motion for Summary Judgment Against Shah (Doc. 220) is **DENIED**.

3.    Plaintiff's request for reconsideration in his Notice/Motion, Supplement, and Second Supplement (Docs. 247, 250, 252) is **DENIED**.

4.    The Clerk shall enter judgment dismissing without prejudice all claims against the Reception and Medical Center in accordance with the Court's Order (Doc. 6); dismissing with prejudice all claims against Defendants Jones and Inch in accordance with the Court's Order (Doc. 243); in favor of Defendant Contarini and against Plaintiff in accordance with the Court's Order (Doc. 243); and in favor of Defendant Shah and against Plaintiff in accordance with this Order.

5.    The Clerk shall terminate any pending motions and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 11th day of September, 2020.


TIMOTHY J. CORRIGAN
United States District Judge

16

JAX-3 9/4
c:
Nyka O'Connor, #199579
Counsel of Record